**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT W. MORELAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:05CV2050MLM** |
| | ) | |
| **JO ANNE BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Jo Anne B. Barnhart ("Defendant") denying the application of Robert W. Moreland ("Plaintiff") for Social Security benefits under Title II of the Social Security Act under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff has filed a brief in support of the Complaint. Doc.11. Defendant has filed a brief in support of the Answer. Doc. 14. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). Doc. 13.

**I.**
**PROCEDURAL HISTORY**

Plaintiff filed an application for a disability benefits in January 1999. (Tr. 110). Following unfavorable initial and reconsideration determinations, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On July 25, 2000, following a hearing, the ALJ issued a partially favorable decision in which he found that Plaintiff was under a disability as defined in the Act from August 20, 1997, through October 31, 1998. (Tr. 110-26). Plaintiff sought review of the ALJ's decision with the Appeals Council. (Tr. 104).

While Plaintiff's appeal was pending, he filed another application for disability benefits on May 22, 2001. In October 2001, a lay adjudicator found Plaintiff disabled since June 26, 2000. (Tr. 12). On October 18, 2002, the Appeals Council granted Plaintiff's request for review and consolidated the 1999 and 2001 applications. On January 29, 2003, the Appeals Council affirmed the ALJ's decision that Plaintiff was disabled from August 20, 1997, through October 31, 1998, and vacated the decision with respect to the period since November 1, 1998. (Tr. 13). The Appeals Council remanded Plaintiff's claim and offered him the opportunity for a new hearing on the issue of whether he had been disabled since October 31, 1998. (Tr. 13).

On July 30, 2004, following a hearing, an ALJ found that Plaintiff was under a disability as defined by the Act through March 22, 1999, and that he was not disabled after that date. (Tr. 12-22). On August 30, 2005, the Appeals Council denied Plaintiff's request for review. (Tr. 5-7). As such, the ALJ's decision of July 30, 2004, stands as the final decision of the Commissioner.

## II.
## MEDICAL RECORDS

Records of Curtis S. Cox, M.D., reflect that Plaintiff had a lumbar fusion on November 15, 1997, at St. Mary's Health Center and that it required the use of two 16 x 26 Ray threaded cages at L4-5. On discharge Plaintiff was instructed to wear his brace at all times, to keep his incision dry, and to walk as much as tolerated. (Tr. 623).

On June 2, 1998, Dr. Cox reported that he performed a second a lumbar fusion on Plaintiff with BAK cages at L5-S1 and posterolateral fusion with autograft at L4-5 and S1. (Tr. 611-12).

On July 14, 1998, Dr. Cox reported that six weeks post surgery Plaintiff has improved; that Plaintiff no longer had a burning sensation in his anterior thigh; that he did have some numbness in his anterior thigh and some occasional aching in his low back; and that Dr. Cox thought it would be about six months from the date of his surgery that Plaintiff could return to work. (Tr. 636).

August 11, 1998, Dr. Cox reported that Plaintiff was two months post surgery; that he weighed 294 pounds; that less than a year prior he weighed 260 pounds; that he had started chewing tobacco; that nicotine fights against a fusion; and that Plaintiff reported that he had a "taken a turn for the worse." (Tr. 635).

Records of Health South reflect that Plaintiff underwent physical therapy from October 26, 1998, through November 12, 1998. (Tr. 663-57). In a Discharge Note, dated November 20, 1998, Lyle Rasmussen, PT, reported to Jeffrey Woodward, M.D., that Plaintiff did not keep his last appointment and that, therefore, PT Rasmussen was unable to re-evaluate Plaintiff. PT Rasmussen further stated that Plaintiff tolerated very low level activities without increase in his discomfort and that he was always pleasant and cooperative during his treatments. (Tr. 652).

Dr. Woodward reported on September 28, 1998, that Plaintiff had not worked since he was injured at work in May 1997; that physical examination showed that Plaintiff was moderately obese, that he stood with frequent pain, and that he walked in a bent position; that Dr. Woodward's impression was chronic back pain, marked restricted active motion with complaints of pain, significant obesity and deconditioning and no clear narcotic analgesic abuse despite prolonged usage and availability. Dr. Woodward's recommendations included continued increase in daily walking and that Plaintiff remain off work for at least the next three weeks. (Tr. 569-71).

Dr. Woodward reported on October 13, 1998, that he was told by the "rehab nurse that the bone electric stimulator unit indicated that it had been used for only ten days total. The stimulator has an internal timer which records days and hours of usage. The patient vehemently denies not using the stimulator." (Tr. 566).

Salim Rahman, M.D., of Springfield Neurological Clinic, Inc., reported on February 4, 1999, that Plaintiff said that postoperatively, the pain in his leg had improved and that he had numbness in

the left lateral thigh with increasing back pain and that his back pain was much worse postoperatively. Dr. Rahman also reported that Plaintiff was not on any medications; that his gait was normal; that his flexors, including finger flexors, were 5/5; that his finger abductors, wrist, elbow, long toe and knee extensions were 5/5; that his ankle dorsiflexors were 5/5; that his straight leg raise and femoral stretch were negative; that plain x-rays of the lumbar spine showed good positioning of the interbody cages at L4-5 and L5-S1; that the alignment of the spine appeared anatomic; that a posterior lateral fusion mass was noted; and that his impression was low back pain. Dr. Rahman further reported that he told Plaintiff that the spine looked like it was in good position; that he could not explain Plaintiff's symptoms; that Plaintiff could have a repeat myleogram to see if there was a mechanical explanation for his left leg pain; and that Plaintiff said even if a myleogram showed an abnormality he would not consider another back operation. (Tr. 591-93).

Nancy Dickey, OTR/L, prepared a Functional Capacity Evaluation dated March 4, 1999, in which she stated that Plaintiff was referred to assess his functional capacities; that the evaluation took four hours; that Plaintiff's ability to reach was occasional to frequent; that his ability to squat was "partial squat only/very occasional;" that his ability to bend was very occasional to ROM limits; that he could stand in one place for short periods of time, five minutes; that he could sit for about thirty minutes and then change position and could resume sitting; that he could walk short distances; that he could occasionally climb stairs; that he could occasionally carry fifteen pounds and lift five pounds to shoulder height and above his head; that it was not recommended that he frequently lift; that he could frequently carry and lift negligible weights. Ms. Dickey further stated that Plaintiff's work level was sedentary to light. (Tr. 577-89).

Dr. Woodward reported on March 16, 1999, that Plaintiff was seen for his final evaluation; that Plaintiff had a CT scan which indicated good position of Ray bone cages and good bone lumen

in cages; that a radiology report indicated "fusion bone graft around the laminectomy site visible"; that Plaintiff said that Dr. Cox put him on a ten pound lifting limit after surgery and that this had not changed; that Plaintiff had reached maximum medical improvement; that there was good fusion mass and good alignment post surgery; that Dr. Woodward's electrodiagnostic testing of the left leg was within normal limits; that Plaintiff was released to full-time modified duties; and that he could lift, push, and pull up to 30-40 pounds and could occasionally bend, kneel and stoop. (Tr. 564).

In a report to Plaintiff's employer dated March 22, 1999, Dr. Cox stated that Plaintiff's prognosis was stable; that his work status was modified duty, full-time; that he could lift, push, and pull 30-40 pounds; and that he could not bend, kneel, or stoop. (Tr. 308).

James Bass, M.D., reported on July 6, 1999, that Plaintiff weighed 321 pounds and was "extremely obese" and that Plaintiff was to go on a weight reduction diet and stop smoking. Dr. Bass's report of this date further states:

> They are going through disability claims with the previous employer where the accident occurred. I told them that once this was finished and completed, he needs to pursue some other form of employment utilizing his mental functions. I discussed with him the possibility of pursuing computer training through R.T.I. He needs to get out of the house and have more of a purpose in life instead of sitting at home eating and smoking cigarettes.

(Tr. 264-65).

Dr. Bass's notes of July 19, 1999, state that he had a telephone conversation with Plaintiff and that Plaintiff said that he had been watching his diet; that he had stopped smoking; that he had no chest pain; and that he was feeling better in general. (Tr. 264).

On December 28, 1999, P. Brent Koprivica, M.D., examined Plaintiff for purposes of evaluation and reviewed his medical file. Dr. Koprivica reported that Plaintiff said that his standing tolerance was one and a half to two hours if he can lean on a surface and that he used a cane intermittently for walking. Dr. Kprivica noted that Plaintiff did not ambulate with an assistive device.

Dr. Kopriva's report states that he recommended Plaintiff receive treatment at a pain clinic. He also said that he would limit Plaintiff to the sedentary demand level of activity; that Plaintiff will need postural allowances so he can change position as needed; that Plaintiff's captive sitting, standing, and walking would be limited to thirty minute intervals; that Plaintiff should not do any bending, pushing, pulling or repetitive lifting; that he would restrict Plaintiff from climbing; that in his opinion Plaintiff "is incapable of accessing the open labor market currently" and "will be totally disabled for more than twelve months"; that he recommends that Plaintiff receive vocational rehabilitation; "that without successful responses to chronic pain management and vocational rehabilitation, it [was his] opinion that [Plaintiff] will be permanently and totally disabled"; that if Plaintiff is successful in returning to the open labor market through successful responses to chronic pain clinical and vocational retraining, he would assign Plaintiff a fifty percent permanent partial disability; and that Plaintiff should be evaluated by an ear, nose and throat specialist due to an occupational hearing loss. Dr. Kopriva also reported that Plaintiff gave maximum voluntary effort and showed no signs of symptom magnification. (Tr. 280-91).

Gary Weimholt, M.S., Vocational Rehabilitation Consultant, performed a Vocational Rehabilitation Assessment/Evaluation of Plaintiff on February 11, 2000. Mr. Weimholt reported on February 16, 2000, that Plaintiff performed basic skills at an eighth grade level; that Plaintiff's perception and peg board testing resulted in scores below that required for clerical jobs, assembly jobs, factory work, vocational rehabilitation and industrial positions; that he had poor finger dexterity and bilateral arm/hand coordination for small parts production or electrical assembly; that "[c]onsidering Dr. Woodward's restrictions a nearly full range of most jobs in the light physical demand range could be performed"; that "outboard-motor inspector" was a precise match of transferable job skills at the light physical demand level; and that there were eleven "Light

Occupational Titles identified through transferable skills analysis which are considered to be generally transferable and may require some period of learning new products, or using new work tools." Mr. Weimholt further reported that in his opinion Plaintiff has the capacity for performing less than the full range of sedentary work; that Plaintiff does not have the ability to perform clerical work, sales work, telemarketing or receptionist jobs; that Plaintiff is "totally vocationally disabled"; and that there is no reasonable expectation that an employer in the State of Missouri or the local labor market would hire [Plaintiff] for any position." (Tr. 270-79).

Brian Cysewski, Ph.D., prepared a Psychological Evaluation of Plaintiff, dated April 4, 2000. Dr. Cysewski's report states that Plaintiff said that he believed that he was unable to work "due primarily to the injuries sustained when he was taking the out drive off an inboard boat motor" and that he said that he is in constant pain. Dr. Cysewski further stated that the medical records did not support Plaintiff's "report of pain at the present time" and that "such a suspect of exaggeration of problems would also be consistent with [Plaintiff's] poor effort on the Wechsler Adult Intelligence Scale-III." Dr. Cysewski's diagnostic impression of Plaintiff was as follows: Axis I, "Adjustment Disorder with depressed mood R/O Malingering"; Axis II, "Borderline Intellectual Functioning, R/O Personality Disorder, NOS"; Axis II, "See Medical Records"; Axis IV, "Unemployment, Financial Problems"; and Axis V, 70. (Tr. 258-59).

William R. Holcomb, Ph.D, prepared a Psychological Report dated October 10, 2000. Dr. Holcomb's report states that during the interview Plaintiff was oriented to time, place, person and situation and that he was clearly comfortable; that Plaintiff denied any problems with appetite and appeared to be "slightly obese"; that Plaintiff said he has difficulty sleeping; that Plaintiff did not have any prior care with mental health services; that Plaintiff's wife said that Plaintiff "felt better recently because they [had] just settled a Workman's Compensation claim"; and that Plaintiff's memory

function was in normal limits. Dr. Holcomb concluded that Plaintiff was not malingering his symptoms of pain and that observations confirmed the opinion of Gary Weimholt that Plaintiff is totally disabled and unable to lift weights of five to ten pounds and that Plaintiff's range of motion is extremely limited. Dr. Holcomb also concluded that Plaintiff is experiencing significant depression associated with his pain; and that Plaintiff's symptoms include high levels of anxiety, poor self-esteem, fatigue, poor concentration, and accompanying interpersonal and marital discord. Dr. Holcomb stated that he concurred "with previous assessments that [Plaintiff] is totally disabled and is not able to be gainfully employed" and stated that "this evaluation would also argue that extreme levels of anxiety, worry, and depression exacerbate further [Plaintiff's] disability." (Tr. 250-55).

 Records of orthopaedic surgeon, Michael J. Snyder, M.D., reflect that this doctor evaluated Plaintiff on November 8, 2000. After reviewing Plaintiff's records and examining him, Dr. Snyder reported that Plaintiff's x-rays showed central disc protrusion and evidence of posterolateral interbody fusion; that Plaintiff had failed back syndrome; that the damage to Plaintiff's lumbar spine is not correctable by surgical intervention; and that he would be unable to engage in gainful employment for the rest of his life. (Tr. 247-48).

On August 14, 2001, Plaintiff was evaluated by Eugene R. Adelmann, M.D., at the direction of the Social Security Administration. Dr. Adelmann's report states that his physical findings included some mild edema of the right ankle, lumbar surgical scars, moderate tenderness with palpataion over the mid lower lumbar spine area, no definite sacral iliac joint neruo static notch tenderness, moderate left calf atrophy in comparison to the right, generally depressed deep tendon reflexes, "moderately dense loss to pin prick, cold, light touch involving the dorsum of the left foot and lateral calf area," no sensory loss on the right; no definite weakness on muscle testing, and "on sciatica stretch testing, considerable terminal resistance on the left, less so on the right." Dr.

Adelmann further reported that Plaintiff resisted any attempts at back extension; that lateral rotation could be carried out no more than ten degrees in either direction; and that flexion was no better than thirty degrees. Dr. Adelmann's impression was residual L5-S1 radiculopathy, residual left L5-S1 radiculopathy, probable left lateral thermal sensor cutaneous neuropathy related to morbid obesity, probable super imposed mechanical back strain, and moderate to severe hearing loss. Dr. Adelmann opined that Plaintiff could sit and stand no more than twenty to thirty minutes, walk very slowly for one block and lift no more than ten or fifteen pounds. He further reported that Plaintiff had good hand dexterity, that his speaking was intact, and that he was competent to handle his own personal affairs. (Tr.238-40).

George Pjura, M.D., reported to Dr. Bass on July 29, 2003, that an MRI of Plaintiff's lumbar spine showed that the cages were well positioned; that the vertebrae remained well aligned; and that there was disc intrusion into the inferior portions of the foramina bilaterally at L4-5, evidence of granulation tissue in the canal and foramen at the operative levels and an osteophyte/disc complex impressing the region of the lateral recess on the right at L5-S1. (Tr. 236-37). Also on this date Dr. Pjura diagnosed degenerative joint disease and chronic low back pain. (Tr. 235).

Dr. Bass reported on July 29, 2003, that Plaintiff's heart did not have murmur; that there was no edema in Plaintiff's extremities; that his SI joints were mildly tender; that his hypertension was doing "fairly well"; that Plaintiff was moderately deaf; and that he had borderline diabetes and longstanding obesity. (Tr. 234).

Dr. Bass reported on August 12, 2003, that Plaintiff was being fitted for hearing aids and that Dr. Bass stressed to Plaintiff the importance of losing weight in regard to his back problems. (Tr. 235).

## V.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 788, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § § 404.1520(f). Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate

burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder.

Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803,

804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is

supported by "substantial evidence").  Thus, an administrative decision which is supported by

substantial evidence is not subject to reversal merely because substantial evidence may also support

an opposite conclusion or because the reviewing court would have decided differently.  Krogmeier,

294 F.3d at 1022 (internal citations omitted).  See also Eichelberger,  390 F.3d at 589; Nevland v.

Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir.

1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence,

the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse

v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical impairment which can be expected to result

in death or has lasted or can be expected to last for a continuous period of not less than 12 months …."  42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced."  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility.  Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing.  Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints.  Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 902 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he

considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health and Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-7 (8th Cir. 1982) (en banc). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Rautio, 862 F.2d at 180; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Use of the Medical-Vocational Guidelines is appropriate if the ALJ

discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. <u>Carlock v. Sullivan</u>, 902 F.2d 1341, 1343 (8th Cir. 1990); <u>Hutsell</u>, 892 F.2d at 750.

**VI.**
**DISCUSSION**

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. <u>Onstead</u>, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. <u>Krogmeier</u>, 294 F.3d at 1022.

Plaintiff argues that he should be found disabled because his impairment meets Listing 1.04, Disorders of the Spine; that the ALJ erred in finding that Plaintiff can do the full range of light work; and that the ALJ ignored the opinions of Dr. Holcomb, Mr. Weimholt, and Morris Alex, M.D., a medical expert who testified at the hearing. For the following reasons, the court finds that Plaintiff's arguments are without merit.

**A.    Plaintiff's Spine Impairment:**

As fully set forth above Plaintiff had two lumbar fusion surgeries, the second of which was performed in June 1998. The ALJ found that Plaintiff was not disabled based on problems with and related to his spine. Plaintiff contends that the ALJ should have found that he is disabled based on Listing 1.04, Disorders of the Spine. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532 (1990). To equal medically a listed impairment, the medical findings must at least be equal in severity and duration to the listed impairment. 20 C.F.R. § 404.1526.(a). <u>Marciniak v. Shalala</u>, 49 F.3d 1350, 1353 (8th Cir. 1995)

(quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.'").

Section 1.04, Disorders of the Spine, states that such a disorder must "result in compromise of nerve root (including the cauda equina) or the spinal cord" and include:

A. Evidence of nerve root compression characterized by neuro-anatomic distributation of pain, limitation of motion of the spine, motor loss ... accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable diagnostic imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once very 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudicatioin, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively as defined in 1l00B2b.

20 C.F.R.. Pt. 404, Subpt. P, App. 1.

In regard to Listing 104.A, the court notes that the record does not establish that Plaintiff had nerve root compression with the designated characteristics. In fact, in regard to motor loss, Dr. Rahman reported finger flexors, finger abductors, wrist, elbow, long toe, knee extensions, and ankle dorsiflexors of 5/5. In regard to Listing 104.B the record does not establish spinal arachnoiditis with the stated characteristics. In regard to Listing 104.C, although Plaintiff was diagnosed with lumbar spinal stenosis, the record does not establish that Plaintiff has the inability to ambulate effectively. Indeed, Plaintiff told Dr. Koprivca that he used a cane intermittently and Dr. Koprivca reported that Plaintiff did not ambulate with an assistive device. Likewise, Dr. Adelmann reported that Plaintiff leaned forward when walking but he did not indicate that Plaintiff used an assistive device. While Plaintiff testified at the hearing that he used an assistive device all the time when he walks, he also testified that no doctor has prescribed such use; he was using it on his own. (Tr. 36).

In regard to Plaintiff's lumbar degenerative joint disease, the ALJ considered that on March 22, 1999, Plaintiff had medically improved and Dr. Woodward released him to full time, modified duties. The ALJ also considered a normal electrodiagnostic study and CT scanning and radiographic studies showing good fusion. The ALJ further considered the report of Dr. Rahman, a board certified neurosurgeon, that Plaintiff's spine was in very good condition and that he could not explain Plaintiff's symptoms. The court notes that Dr. Rahman's notes of February 1999 state that Plaintiff was not on any medications[1]; that his gait was normal; that x-rays of the lumbar spine showed good positioning of the interbody cages; and that the alignment of the spine was anatomic. Also, Dr. Rahman recommended that Plaintiff have a repeat myleogram to see if a cause for his pain could be identified but Plaintiff said he would not have one. Indeed, a claimant's failure to comply with prescribed medical treatment is inconsistent with complaints of disabling pain. Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996).

The ALJ considered Dr. Bass's notes of July 6, 1999, stating that he told Plaintiff that he needed to get out of the house and have a purpose in life. The court notes that also on this date Dr. Bass also told Plaintiff to stop smoking and to diet and that on July 19, 1999, Plaintiff reported that he had been watching his diet, stopped smoking, and was feeling better in general. Conditions which can be controlled are not disabling. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989); James, 870 F.2d at 450.

The ALJ also considered that Plaintiff's 2003 MRI showed degenerative joint disease but that this condition is not unexpected in a person of Plaintiff's age nor does it support a finding of a

---

[1] Where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999).

complete inability to work. Moreover, the court notes that upon reviewing the 2003 MRI of Plaintiff's lumbar spine Dr. Pjura reported that the cages were well positioned and that the vertebrae were well aligned.

Upon concluding that Plaintiff's joint disorder does not meet the Listings, the ALJ also considered Dr. Kopriva's report of December 1999 in which Dr. Kopriva reported that Plaintiff was incapable of accessing the open labor market. The ALJ considered that the opinion of Dr. Kopriva, who only saw Plaintiff once for purposes of evaluation, should be afforded less weight than the opinion of Dr. Woodward, who was a treating doctor. The court first notes that while Dr. Kopriva suggested that Plaintiff was incapable of work in the open labor market, he also said that Plaintiff should be provided vocational rehabilitation. Also, Dr. Kopriva's statement in regard to the open labor market addressed Plaintiff's condition as of the date of the examination; Dr. Kopriva also said that "in the event [Plaintiff] is successful in returning to the open labor market through successful responses to a chronic pain clinical and vocational retraining," he would assign a fifty percent permanent partial disability to him. Thus, Dr. Koprivica did not rule out the possibility of Plaintiff's successful recovery and rehabilitation nor did he rule out the possibility of Plaintiff's working although he did state that, in any event, Plaintiff would be unable to return to his past substantial gainful employment.

The ALJ also considered the opinions of Dr. Snyder and Dr. Adelmann and said that Dr. Woodward's opinion should be given greater weight than the opinions of either Dr. Snyder or Dr. Adelmann as well as that of Dr. Koprivica who each saw Plaintiff only once. The ALJ noted that Dr. Woodward's conclusions are consistent with the objective findings and that his opinion is supported by a board certified neurologist. "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal

quotation marks omitted). The opinions and findings of a plaintiff's treating physician are entitled to considerable weight. Indeed, if they are not controverted by substantial medical or other evidence, they are binding. <u>Cunningham v. Apfel</u>, 222 F.3d 496, 502 (8th Cir. 2000)(citing <u>Ghant v. Bowen</u>, 930 F.2d 633, 639 (8th Cir.1991); <u>Kelley v. Callahan</u>, 133 F.3d 583, 589 (8th Cir.1998)). "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." <u>Chamberlin</u>, 47 F.3d at 1494 (citing <u>Matthews</u>, 879 F.2d at 424). As more fully set forth above, Dr. Rahman, a neurologist, reported that examination of Plaintiff and x-rays did not support Plaintiff's subjective complaints. <u>See</u> <u>Kelley v. Callahan</u>, 133 F.3d 583, 588 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than the opinion of a source who is not a specialist."). As the ALJ identified specific reasons including the results of diagnostic studies for crediting Dr. Woodward's opinion over the opinion of examining and consulting doctors the court finds that the ALJ correctly applied the law upon holding that the opinion of Dr. Woodward should be given greater weight than opinions of doctors who only saw Plaintiff once on an examining or consulting basis. Further, substantial evidence on the record supports the ALJ's decision in this regard.

In regard to Dr. Snyder's opinion that Plaintiff was unable to engage in gainful employment for the rest of his life due to failed back syndrome and to the extent that Dr. Koprivica opined that Plaintiff is disabled, a physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." <u>Ellis v. Barnhart</u>, 392 F.3d 988, 994 (8th Cir. 2005). <u>See also</u> <u>Ward v. Heckler</u>, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating

physician's statements were conclusory in nature."); Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994).

The ALJ concluded that, while Plaintiff does have degenerative joint disease, the objective findings do not support a complete inability to work. The court finds for the reasons set forth above that this conclusion of the ALJ is based on substantial evidence on the record as a whole and that it is consistent with the Regulations, including Listing 1.04, and the applicable case law.

**B.      Testimony and Opinion of Dr. Alex:**

Dr. Alex testified at the hearing as a medical expert. He said that he reviewed Dr. Adelmann's findings and other medical reports; that the medical reports are "extremely confusing"; that in his opinion the majority of the individuals examining Plaintiff have said that they found positive physical findings and "another group say[s] that they do not find any findings"; and that Plaintiff's claims that he has back and leg problems, that he can stand 30 to 45 minutes, that he cannot bend, stoop, or squat, that he can walk a couple of hundred yards with a cane, that he can walk 75 yards without a cane, that he can lift 10 to 15 pounds, and can climb stairs using his cane and a railing are reasonable. (Tr. 47-48). Upon being asked whether Plaintiff's medical records reflect that he would need to lie down four to five times during the day for an hour at a time, Dr. Alex replied that would be "rather unusual" and that, "in fact, the more activity an individual has the better off they are." (Tr. 49). Dr. Alex also testified that, although Plaintiff lost weight, he was still 90 to 100 pounds overweight. He also said that it is his opinion Plaintiff meets the Listings if Plaintiff's statements that he suffers radiculopathy and numbness in his leg and if his statements regarding pain are credited. Dr. Alex testified, however, that he could not make such a conclusion based on the records as there is too much conflict. (Tr. 52).

Plaintiff contends that the ALJ did not afford Dr. Alex the opportunity to consider evidence presented after the hearing. In regard to this claim, the court notes that the Regulations do not require the ALJ to forward such evidence to a medical expert rendering an opinion. Plaintiff further argues that in reaching his conclusion that Plaintiff was not disabled, the ALJ did not consider Dr. Alex's testimony. First, an ALJ's failure to cite specific evidence, in this case the Dr. Alex's testimony, does not indicate that such evidence was not considered. Montgomery v. Chater, 69 F.3d 273,275 (8th Cir. 1995). See also Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").

Second, an "arguable deficiency in opinion-writing technique," does not require a court to set aside an administrative finding when that deficiency had no bearing on the outcome. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Dr. Alex was neither a treating or examining physician. He merely reviewed the record prior to testifying. As such, had the ALJ addressed Dr. Alex's opinion he was not required to give it controlling weight. See Estes, 275 F.3d at 725; Chamberlain, 47 F.3d at 1494.

Third, to the extent that Dr. Alex opined whether or not Plaintiff is disabled within the meaning of the Act, as stated above, this is a conclusion reserved for the Commissioner. Ellis, 392 F.3d at 994.

Fourth, while Dr. Alex's testimony suggests that if Plaintiff's description of his pain is credited he would be unable to work, Dr. Alex declined to make credibility findings and acknowledged that it was not his position to do so. Indeed, it is the ALJ's job to make credibility resolutions. Polaski,

739 F.2d at 1322. As such, the court finds that the failure of the ALJ to address Dr. Alex's testimony does not effect on the outcome of this matter and that, therefore, this failure does not establish grounds to set aside the ALJ's decision or to find that it is not supported by substantial evidence. See Reynolds, 82 F.3d at 258.

**B.      Opinion of Dr. Holcomb:**

The ALJ concluded that Plaintiff does not have any psychological limitations. Plaintiff contends that upon reaching this conclusion the ALJ improperly discounted the opinion of Dr. Holcomb who conducted a psychological evaluation of Plaintiff.

The ALJ considered the psychological evaluation performed by Dr. Holcomb and noted the conflicts between it and Dr. Cysewski's report. Dr. Cysewski likewise conducted a psychological evaluation of Plaintiff. The ALJ correctly noted that each of these doctors saw Plaintiff on a consulting basis, that they saw him only once and that, therefore, neither of their opinions was entitled to controlling weight. Chamberlin, 47 F.3d at 1494. The ALJ considered that Dr. Cysewski's impression was that Plaintiff was exaggerating, that he was giving less than full effort, and, that he was, therefore, possibly malingering. The ALJ also considered that Dr. Holcomb opined that Plaintiff did not exaggerate, was not malingering, and was experiencing significant depression and anxiety. The ALJ further considered that both doctors used results form MMPI-2 tests to support their opinions.

Upon choosing to credit Dr. Cysewski the ALJ considered that when Plaintiff was tested by Dr. Cysewski his IQ scores were nearly mentally retarded but when he was tested just two months earlier by his vocational expert his IQ was 111, high average. The ALJ further considered that in regard to Plaintiff's claim of depression, he did not allege psychiatric problems when he first applied for disability; that he did not have ongoing treatment by a psychiatrist; that throughout most of the

relevant period he had not taken psychiatric medication; and that he had not been hospitalized on a psychiatric basis. See Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994) (holding that where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain);Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992) (holding that absence of treatment indicates an absence of a mental impairment); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991) (holding that seeking limited medical treatment is inconsistent with claims of disabling pain); Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988) (holding that failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain).

Upon finding that Plaintiff does not have any psychiatric limitations ALJ also considered the GAF score of 70 which Dr. Cysewski assigned to Plaintiff. Global assessment of functioning or GAF is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," and scores of 61 to 70 represent "mild," Scores of 90 or higher represent absent or minimal symptoms or impairment. Id. at 32.

The court finds for the reasons more fully set forth above that the ALJ's discrediting Dr. Holcomb's opinion is consistent with the Regulations and case law as he relied upon diagnostic testing, Plaintiff's statements to doctors, Plaintiff's testimony, and Plaintiff's medical records. The court further finds that the ALJ's decision that Plaintiff does not suffer from a psychological impairment is supported by substantial evidence on the record.

**D.      Opinion of Vocational Rehabilitation Consultant Gary Weimholt**:

Plaintiff contends that the ALJ erred in discounting the opinion of Vocational Rehabilitation Consultant Gary Weimholt who is not a doctor and who conducted a vocational evaluation of Plaintiff.  Mr. Weimholt concluded that Plaintiff could do less than the full range of sedentary work and that with his ongoing back pain he is totally vocationally disabled and that he can do less than the full range of sedentary work.  Mr. Weimholt based this conclusion on a premise that Plaintiff had poor finger dexterity.

In regard to Mr. Weimholt, the court first notes that he is not an acceptable medical source according to the Regulations.  § 20 C.F.R. § 419.913(a) (listing acceptable medical sources). Second, as noted by the ALJ, Mr. Weimnolt's statements that Plaintiff is "vocationally disabled" and that there is no reasonable expectation that any employer would hire Plaintiff are statements which do not necessarily reflect a disability as defined in the Act.

Third, as noted by the ALJ, the RFC upon which Mr. Weimholt based this opinion that Plaintiff can do less than the full range of sedentary work was not based upon Plaintiff's limitations as articulated by Dr. Woodward.  Rather, the limitations applied by Mr. Weimholt in reaching his conclusion regarding Plaintiff's RFC were more restrictive than those found by Dr. Woodward.  As the ALJ found that Plaintiff's restrictions are consistent with those found by Dr. Woodward, the restrictions applied by Mr. Weimholt were more restrictive than those found by the ALJ.  Thus, the RFC applied by Mr. Weimholt in reaching his conclusion differed from the RFC applied by the ALJ. See Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobana v. Sec'y of Health Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985).

Fourth, Mr. Weimholt noted that applying Plaintiff's restrictions as found by Dr. Woodward, Plaintiff would have the RFC for nearly the full range of light jobs. As such, Mr. Weimholt's report is not inconsistent with the ALJ's conclusion that Plaintiff is not disabled.

Fifth, as noted by the ALJ, to the extent that Mr. Weimholt attempted to determine Plaintiff's RFC, it was ALJ's job, and not that of Mr. Weimholt, to determine Plaintiff's RFC. See Eichelberger, 390 F.3d at 591 ("The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations.")

For the reasons fully set forth above, the court finds that the ALJ's consideration of Mr. Weimholt's report is based on substantial evidence and that it is consistent with the Regulations and case law.

**E.    Opinion of Dr. Adelmann:**

Plaintiff argues that the ALJ failed to credit the report of Dr. Adelmann. The court has found above that the ALJ gave proper weight to Dr. Adelmann's report in regard to Plaintiff's allegation of disability based on his spine. While Plaintiff does not specifically address Dr. Adelmann's findings in regard to Plaintiff's ability to hear, the court will consider this aspect of Dr. Adelmann's report and the failure of the ALJ to credit Dr. Adelmann in this regard. Dr. Adelmann reported that Plaintiff "has considerable difficulty with normal conversational speech" and that he "is not able to hear normal conversational speech." (Tr. 239). The court further notes that Dr. Bass described Plaintiff's hearing loss as profound but stated in August 2003 that Plaintiff was to be fitted with hearing aids.

The ALJ found that Plaintiff had a combination of impairments which are severe. These impairments include a hearing loss. In particular, the ALJ found that Plaintiff "has some hearing problems." The ALJ further found that "recently it was determined that he would be fitted with

hearing aides.  There is no persuasive evidence that this is an irremediable problem.  At the latest hearing [Plaintiff] demonstrated sufficient hearing for the jobs cited by the vocational expert." (Tr. 18).  The record, however, does not reflect whether Plaintiff received hearing aids, and if so, to what extent the hearing aids improved his hearing.  Additionally, the record does not reflect that Plaintiff's hearing loss was actually tested.

Resort to the Medical-Vocational Guidelines is appropriate when a claimant does not have nonexertional impairments which substantially limit his or her ability to perform substantial gainful activity.  If a claimant is found to have only exertional impairments, the Commissioner may meet her burden of showing that there is work which the claimant can perform by referring to the Medical Vocational Guidelines. See Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992)  If, however, the claimant is also found to have nonexertional impairments that diminish his or her capacity to perform the full range of jobs listed in the Guidelines, the Commissioner must solicit testimony from a vocational expert to establish that there are jobs in the national economy that the claimant can perform. See id.  A hearing loss is a nonexertional impairment.  See SSR 83-10, 1983 WL 31251, at * 6  (holding that a nonexertional impairment is "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull.  This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for activities").    SSR 83-10, 1983 WL 31251, at *7,  defines nonexertional limitation as   "[a]n impairment-caused limitation of function which directly affects capability to perform work activities other than the primary strength activities."  As such, to the extent Plaintiff has a hearing loss, such loss is a nonexertional impairment.

The Eighth Circuit has explained the circumstances when a claimant has nonexertional limitations but the ALJ need not resort to the testimony of a vocational expert. The court held in Sanders v. Sullivan, 983 F.2d 822, 823 (8th Cir. 1992), that:

> "[A]n ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir.1988). However, if the claimant's nonexertional impairments diminish his or her residual functional capacity to perform the full range of activities listed in the Guidelines, the Secretary must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's characteristics. Id. at 349. "Nonexertional limitations are limitations other than on strength but which nonetheless reduce an individual's ability to work." Asher v. Bowen, 837 F.2d 825, 827 n. 2 (8th Cir.1988). Examples include "mental, sensory, or skin impairments, as well as impairments which result in postural and manipulative limitations or environmental restrictions." Id.; See 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e) (1992).

See also Harris v. Shalala, 45 F.3d 1190, 1194 (8th Cir.1995).

Additionally, an ALJ posing a hypothetical to a vocational expert is not required to include all of a claimant's limitations, but only those which he finds credible. Sobania, 879 F.2d at 445; Rautio, 862 F.2d at 180. The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard, 175 F.3d at 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt, 250 F.3d at 625; Sobana, 879 F.2d at 445; Roberts, 783 F.2d at112. Where a hypothetical question sets precisely sets forth all of the claimant's physical and mental impairments, a vocational expert's testimony constitutes evidence supporting the ALJ's decision. Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

The ALJ in the matter under consideration found that Plaintiff has the RFC "to lift and carry 10-15 pounds with the ability to walk no more than 75 yards without the use of a cane, the ability to stand no more than 30-45 minutes at a time, with an alternate sit/stand option but no ability to bend,

stoop, or squat to pick up something from the floor." (Tr. 21). The ALJ obtained the testimony of a vocational expert, Jeffrey F. Groskey, Ph.D., and posed a hypothetical to him which assumed that an individual of Plaintiff's age, education, and past relevant work experience had the RFC which the ALJ attributed to Plaintiff. (Tr. 54-56). The vocational expert testified that a person with such limitations could work as a cashier, maintenance clerk, and order clerk and that these jobs were available in the local or state economy in substantial numbers. (Tr. 56). In response to questioning by Plaintiff's attorney, the vocational expert testified, assuming that the individual could not hear someone speaking to him from a distance similar to the distance that Plaintiff was from the ALJ, that this inability to hear would affect the individual's ability to do the kinds of jobs he mentioned. (Tr. 57). The vocational expert testified, however, that he was not sure what Dr. Adelmann meant to say in regards to Plaintiff's hearing loss and noted that in regard to Plaintiff's testimony he did not "see anything as really out of - - unusual." (Tr. 57).

As stated above, the hypothetical posed to the vocational expert which reflects that there are jobs which Plaintiff can perform is consistent with the ALJ's finding in regard to Plaintiff's RFC. The court finds, however, as the record now stands the RFC which the ALJ attributed to Plaintiff is not supported by substantial evidence because the record does not reflect the extent of Plaintiff's hearing loss other than Dr. Adelmann's and Dr. Bass's statements nor does it reflect whether Plaintiff received hearing aids and, if so, the extent to which hearing aids improved his hearing. Indeed, Dr. Bass's notes regarding Plaintiff's ability to hear are inconsistent with the ALJ's findings and Dr. Adelmann's report is not helpful because it is ambiguous. The court is mindful that the ALJ properly considered his observations of Plaintiff's demeanor at the hearing. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), the ALJ's observations of a claimant's demeanor during the hearing is

a consideration. <u>Villarreal v. Secretary of Health & Human Services</u>, 818 F.2d 461, 463 (6th Cir. 1987) (holding that given his opportunity to observe the claimant, the ALJ's conclusions regarding plaintiff's credibility should not lightly be discarded). The court is concerned, however, in the matter under consideration, that the ALJ's conclusion regarding Plaintiff's ability to hear is inconsistent with the records of his treating doctor, Dr. Bass, as well as the report of Dr. Adelmann, a consultant.

The court will, therefore, reverse and remand this matter. Upon remand, the ALJ should inquire of Plaintiff whether he has obtained hearing aids. Also, upon remand the ALJ should obtain an examination of Plaintiff by a doctor for the purpose of evaluating Plaintiff's hearing. If the ALJ determines that Plaintiff has a hearing loss which is not as severe as that described in the hypothetical posed to the vocational expert by Plaintiff's attorney but that the hearing loss still compromises Plaintiff's ability to perform the full range of light work, the ALJ should pose an appropriate hypothetical to a vocational expert. If the ALJ finds that Plaintiff's hearing loss is equal to that described in the alternative hypothetical, the ALJ must rely upon the testimony of the vocational expert that Plaintiff will be unable to perform cashier, maintenance clerk, and order clerk jobs. Also, if the ALJ determines that Plaintiff's hearing loss does not diminish his RFC then the ALJ may rely upon the hypothetical described above upon which the vocational expert opined that there is work which Plaintiff can perform. Under such circumstances, the ALJ may find that Plaintiff is not disabled. By reversing and remanding this matter, the court does not mean to say that Plaintiff is disabled. Rather, the court is concerned that as the ALJ's decision currently stands it is not supported by substantial evidence in regard to Plaintiff's hearing loss.

**F.    The ALJ's Pain Assessment:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment

for that of the ALJ.  Guillams, 393 F.3d at  801; Hutsell, 892 F.2d at 750;  Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Wheeler, 224 F.3d at 896 n.3; Reynolds, 82 F.3d at 258; Montgomery, 69 F.3d at 275.  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996).  For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

Plaintiff argues that upon considering that Plaintiff received minimal treatment and had minimal use of pain medication that the ALJ failed to consider that Plaintiff's health care was terminated by his employer and that Plaintiff's wife's health insurer denied coverage.  As stated above, where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain.  Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994). Moreover, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents.  Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999).  Plaintiff does not suggest that he sought treatment available to indigents.  As such, the court finds that the ALJ's consideration of Plaintiff's limited medical treatment and minimal use of medication is supported by substantial evidence and that it is consistent with the Regulations.

Plaintiff argues that the ALJ gave no weight to the fact that Plaintiff had a consistent work record. Indeed, a long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). The ALJ, however, considered that Plaintiff's work record neither particularly supports nor detracts from his allegations. The ALJ noted that he had good earnings through 1987 but low earnings from 1988 through 1994, including no earnings in 1991 and 1992, and only $30.40 in 1990. The ALJ further considered that Plaintiff's earnings bounced back from 1995 to 1997, "albeit lagging what he generally earned in the early 1980's." As such, the court finds that the ALJ's consideration of Plaintiff's work history is consistent with the case law and based on substantial evidence.

Plaintiff contends that his daily activities support his allegations of disabling pain. Plaintiff testified at the hearing that he can stand for 30 minutes, sit for 30 minutes, cannot end, twist, or squat and that he lies down four to five times a day for about an hour each time because of back pain. He also testified that he can vacuum; that he sometimes cooks; that his wife has to get things which he cooks out of the refrigerator or freezer; that he takes the dogs outside; that he fishes; that when he fishes he does so for twenty minutes and then goes back to the truck because his back and legs hurt; that he stands when he fishes; that he deer hunts; and that if he kills a deer other gut it. (Tr. 35-27, 39-40). While the ALJ did not specifically address Plaintiff's daily activities, he did state that a claimant's daily activities are a relevant consideration. (Tr. 14). Moreover, as stated above, an ALJ is not required to address every Polaski factor. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger v. Barnhart, 390 F.3d 584, 590

(8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir.2005) (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31 (8th Cir. 1996) (holding that a claimant's daily activities including visiting neighbors, cooking, doing laundry, and attending church were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

As such, the court finds that the ALJ's credibility findings, other than the extent to which they address Plaintiff's hearing loss, are supported by substantial evidence on the record and that they are consistent with the Regulations and case law.


# VI.
## CONCLUSION

For the reasons fully set forth above the court finds that this matter should be reversed and remanded to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4. Upon remand, the ALJ should be directed to fully develop the record in a manner consistent with this court's opinion. **The court stresses that upon reversing and remanding this matter it does not mean to imply that the Commission should return a finding of "disabled."**

The court is merely concerned that the Commissioner's final determination, as it presently stands, is not fully developed concerning Plaintiff's hearing loss. As such, it cannot be said that the record is supported by substantial evidence in this regard.

**ACCORDINGLY**,

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in his Brief in Support of Complaint is **GRANTED**, in part, and **DENIED**, in part. [Doc. 11]

**IT IS FURTHER ORDERED** that a Judgement of Reversal and Remand will issue contemporaneously herewith remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4.

**IT IS FURTHER ORDERED** that upon entry of the Judgement, the appeal period will begin which determines the thirty (30) day period in which a timely application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this <u>15th</u> day of August, 2006.